**Meyer LEVINSON and Beatrice Levinson, his wife individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**MAISON GRANDE, INC., a Fla. Corp.; Norman Goldstein, Trustee under the Siegel Family Trust of May 15, 1969, Dorten, Inc., a Fla. Corp.; S. H. Wills, R. R. Stuken and T. P. Potter, as the last Board of Directors of Dorten, Inc., a dissolved Fla. Corp.; G.A.C. Realty, Inc., a Fla. Corp.; Walter E. Heller & Company, a Fla. Corp.; Robert L. Turchin, Defendants.**

No. 75–56–CIV–EPS.

United States District Court, S. D. Florida, Miami Division.

June 10, 1981.

Bernard Mandler, Miami, Fla., for plaintiffs.

Norman Klein, Miami, Fla., for defendants.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL AND GRANTING DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

SPELLMAN, District Judge.

This cause is before the Court on the plaintiffs' Motion for New Trial and on the defendants' Motion for Judgment Notwithstanding the Verdict. This antitrust action was tried to a jury which returned a special verdict adverse to the Plaintiffs on March 19, 1981.

The facts are as follows. From 1969 to 1971, Robert Siegel, G.A.C. Realty, Inc., and Maison Grande, Inc. planned, developed, and constructed the Maison Grande, a 502-unit condominium at 6039 Collins Avenue, on the ocean at 60th street in Miami Beach, Florida. Prior to completion of construction and prior to sale of the condominium units, the defendants Siegel and G.A.C. sold a small, odd-shaped portion of the land on which the Maison Grande was to be built to separate legal entities from those owning the remaining, large portion of the land. Dorten, Inc., and the Robert Siegel Family Trust became owners of the small portion, while Maison Grande, Inc., and Robert Siegel retained ownership of the large portion. Dorten, Inc., and Maison Grande, Inc., were wholly owned subsidiaries of G.A.C. Realty, Inc.

Robert Siegel and Maison Grande, Inc., sold the condominium units from 1969 to 1971, making it a condition of each sale that the purchaser agree to a 99-year lease of the common interest in the small portion of land, owned by Dorten, Inc., and the Siegel Trust. This portion, upon completion of the project, contained one swimming pool, 45 parking spaces and a portion of a pool deck. Income from the lease of the small portion went to its owners, Dorten and the Siegel Trust.

The plaintiffs alleged that conditioning the unit sales upon the lease agreement constituted an unlawful tying arrangement under Section 1 of the Sherman Antitrust Act. 15 U.S.C. § 1. The tying product was alleged to be the condominium units and the common elements situated on the large portion of land, while the tied product was alleged to be the small portion of land, i. e. the swimming pool, part of the pool deck, and 45 of the building's parking spaces.

The plaintiffs tried the case solely on a *per se* theory. The jury responded to the Court's special verdict form by finding that there were two separate products involved, but that the plaintiffs lacked sufficient economic power in the market for the tying product to appreciably restrain competition for the tied product, thus, finding that the plaintiffs had failed to prove an essential element of the *per se* analysis.

I. Motion for New Trial.

The plaintiffs have moved for a new trial on the basis that the jury's answer to special verdict question number 2 was contrary to the weight of the evidence and that the Court incorrectly instructed the jury on the issue of sufficient economic power in the

market for the tying product. Further, the plaintiffs contend that the Court allowed the introduction into evidence of a business justification defense which is not permitted under a *per se* analysis of tying arrangements.

Taking the plaintiffs' arguments severally, the Court finds that (1) the verdict was not contrary to the weight of the evidence, (2) the Court's charge to the jury was fair and correct, and (3) the issue of business justification was not presented to the jury by either evidence or argument.

(1) The weight of the evidence.

With regard to this Court's authority to grant a motion for new trial based on the weight of the evidence, the Fifth Circuit recently stated,

[N]ew trials should not be granted on evidentiary grounds, unless, at a minimum, the verdict is against the great— not merely greater—weight of the evidence. *Spurlin v. General Motors* [528 F.2d 612, 620 (5th Cir. 1976)]

*Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980).

■ The plaintiffs contended at trial that the defendants' ownership of the Maison Grande gave them sufficient economic power in the market for the tying product to appreciably restrain competition for the tied product. The plaintiffs claimed that the market in which the Maison Grande was economically powerful was the market for oceanfront condominium housing on Collins Avenue between 50th and 70th streets in Miami Beach, Florida. Their argument was that this area of Miami Beach had become known as the "Gold Coast" and it was unusually desirable to purchasers of housing.

The defendants contended that the Maison Grande competed for housing purchasers with other sellers of condominiums, as well as sellers of single family dwellings and owners of rental units, throughout the south Florida area, especially competing with sellers of condominiums from south Broward County to Miami.

The plaintiffs' evidence with regard to the defendants' power in the market for the tying product consisted of testimony by four unit purchasers of condominiums at the Maison Grande to the effect that the Maison Grande was particularly desirable to them, given their personal preference for a beachfront condominium on Miami Beach. The plaintiffs also offered the stipulated evidence that all the purchasers of the condominium units agreed to the 99-year lease; testimony by a Miami Beach real estate broker that the Maison Grande was the only newly constructed condominium selling units on the oceanfront side of Collins Avenue between 50th and 60th streets on Miami Beach in 1970 and 1971; and exhibits showing that the Maison Grande was advertized by the defendants as the only condominium on the "Gold Coast" of Miami Beach.

Cross-examination of the unit purchasers called as Plaintiffs' witnesses indicated that although they preferred the Maison Grande among comparably priced condominiums, there were other condominiums they would have purchased instead, if they had been able to afford them and that they shopped for condominiums from Miami to West Palm Beach.

The evidence presented by the defendants included depositions of other unit owners in the Maison Grande, in which the owners stated that the area in which they were shopping for condominiums extended from Dade to Broward counties and was not limited to Miami Beach or the "Gold Coast." The defendants also offered: evidence that other sellers were offering both condominiums and apartments which competed in price and facilities with the Maison Grande in the area between 50th and 70th streets on Collins Avenue in Miami Beach; testimony that the defendants required a very extensive advertizing budget and a 2-year selling period, featuring special discounts, to sell all the condominium units at the Maison Grande; and market studies indicating that buyers of condominium units in the late 1960s and early 1970s in south Florida were not limited to particular cities but rather shopped for condominiums throughout south Florida, making the condominium

market a vast, tri-county competitive market and indicating that there was no separate market for the Miami Beach "Gold Coast."

Considering all the evidence, the plaintiffs failed to establish that there was a separate market or even a meaningful submarket for housing in the "Gold Coast" of Miami Beach. The plaintiffs failed even to establish that there was public recognition of the area between 50th and 70th streets on Collins Avenue in Miami Beach as the "Gold Coast." Instead, the evidence strongly supported the defendants' contention that the Maison Grande's condominium units were subject to strong competition from comparable housing throughout south Florida.

It is undeniable that the housing market is not easily analogized to commodities markets, machine markets, or money markets. *Cf. International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *I.B.M. Corp. v. United States,* 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085 (1936); and *United States Steel Corp. v. Fortner Enterprises, Inc.,* 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1976). Unlike undeveloped land, which in any given geographic area will generally sell for a standard per-acre price, residential housing is a quixotic market. *Cf. Northern Pacific R.R. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). In some respects, the housing market is more like the market for artwork. For this reason, it is not easy to attribute to any one seller the status of an economic power among competing sellers of housing.

Considering the evidence adduced in this case, unless the Court were to determine as a matter of law that the economic power component of the *per se* analysis is satisfied whenever residential housing is the tying product, the plaintiffs have failed to prove the requisite economic power. The weight of the evidence indicates a highly competitive south Florida housing market in the early 1970's. Every Maison Grande unit owner who testified indicated that he shopped from Miami to Ft. Lauderdale, and several looked farther north. The market

studies offered by the defendants demonstrated the highly competitive nature and geographical dispersity of the housing market in south Florida in the relevant time frame. The long, slow, and expensive selling period for the Maison Grande also demonstrated that it had no peculiar competitive advantage and that other condominiums and other forms of housing competed effectively with its units. The evidence fails to disclose any separate market for housing between 50th and 70th streets on Collins Avenue in Miami Beach, and the great weight of the evidence supports the defendants' position on the economic power issue.

### (2)(a) The Court's instruction on effective competition.

■ The plaintiffs object to the Court's instruction to the jury that if the jury should find that the Maison Grande had effective competition in the housing market that sufficient economic power was not shown. Competitive advantage is the very essence of market power and effective competition is what negates the possibility that one seller can wield market power in any manner, good or bad. The purpose of the antitrust laws is to insure competitive markets. The instruction of the Court correctly informed the jury that if the Maison Grande was operating in a competitive market in which its competitors were thriving, the defendants lacked the requisite economic power. The instruction left the jury free to agree with the plaintiffs' basic contention that the relevant market for the tying product was the "Gold Coast" on Miami Beach, in which case the jury would likely have found no effective competition.

### (2)(b) The Court's instruction on the uniqueness of land.

■ The plaintiffs claim the Court erred in failing to instruct the jury that uniqueness, for purposes of determining competitive advantage and economic power, may be inferred when the tying product is land. While in a strict factual sense the uniqueness of land is indisputable, in the context in which the plaintiffs offered the instruc-

tion the Court found that the instruction, at best, placed unwarranted emphasis on an issue with regard to which the jury was free to exercise its common sense.

The plaintiffs misconstrue *Northern Pacific R.R. v. United States, supra*, to state that land confers uniqueness as a matter of law for the purpose of proving an unlawful tying arrangement. *Northern Pacific* involved extensive, strategic landholdings which gave the railroad company an obvious competitive advantage. The economic power of the seller was clear in that case. *See United States Steel Corp. v. Fortner Enterprises, supra*, 429 U.S. at 619, n. 11, 97 S.Ct. at 867, n. 11.

Land is unique for purposes of specific performance of contracts for sale of land. Beyond that, however, the law does not demand any special uniqueness analysis for real estate. The jury was free to decide from the evidence that the Maison Grande possessed sufficiently unique qualities to give the defendants a competitive advantage. However, the plaintiffs were required to do more than merely show that the alleged tying product involved land.

(3) Evidence of business justification.

■ In their final argument in favor of their motion for new trial, the plaintiffs assert that the Court admitted evidence of business justification introduced by the defendants to demonstrate a lack of economic power. The plaintiffs make a single reference to the record, at page 956 of the transcript, where the Court stated that certain evidence was "admissible from the standpoint of economic power." The plaintiffs neglect to mention that the Court also held that the evidence in question was admissible for the purpose of demonstrating that one product, not two, was being sold by the defendants. Moreover, the evidence in question was in fact not evidence of business justification, but was evidence that the 99-year lease enabled the defendants to charge a lower purchase price for the units and thus, that price competition played a role in any success the defendants may have experienced in selling condominium units at the Maison Grande.

This evidence was clearly relevant to the issues of competition in the market for the tying product. In *Fortner (II), supra*, 429 U.S. at 623, 97 S.Ct. at 869, the credit bargain at issue proved nothing more than the defendant's willingness to provide cheap financing to sell expensive housing. In the Maison Grande's case, the financing structure was reversed, such that cheaper housing was being made available due to expensive long-term financing. This analysis serves to refute the plaintiffs' claim that there were no other explanations for the willingness of the purchasers to obligate themselves under the 99-year lease than the unique qualities of the Maison Grande.

Furthermore, the Court gave a cautionary instruction, during the closing argument of the defendants, to the effect that business justification is not an excuse or defense for violation of the antitrust laws. Thus, the Court's instructions were accurate and no improper or irrelevant evidence was admitted by the Court. These facts combined with the overwhelming weight of the evidence in the defendants' favor convince the Court that the plaintiffs' motion for new trial should be and the same is hereby *DENIED.*

II. Defendants' Motion for Judgment Notwithstanding the Verdict.

■ The defendants moved for a directed verdict at the close of all the evidence, on which motion the Court reserved ruling. Thereupon, the case was submitted to the jury on the basis of a special verdict form. Although the jury decided the case in favor of the defendants, the jury's answer to question number 1 of the special verdict was a finding that the defendants were selling two products rather than one. To this finding, the defendants object and present this motion. For the reasons discussed below, the Court agrees with the defendants' contention and grants their motion for judgment notwithstanding the verdict with respect to the finding expressed in the jury's answer to question number 1 of the special verdict form.

This case presents a simple fact situation. The defendants developed a condominium project, agreeing to split the profits, should there be any, 50% to G.A.C. and 50% to Robert Siegel. In order to maximize their profits and obtain a hedge against inflation, they agreed to transfer the ownership of a small portion of the common condominium property to the Robert Siegel Family Trust, an intervivos trust created by Robert Siegel, and to Dorten, Inc., a G.A.C. subsidiary.

Thereupon, the defendants conditioned the sale of each condominium unit upon a 99-year lease of a common interest in the portion of the condominium land and facilities owned by Dorten and the trust, the income from the lease going half to Dorten and half to the trust. The lease payments were tied to the food index of the government's cost of living index. In essence, the defendants developed one piece of property and then sold part of it and leased part of it to each purchaser.

The plaintiffs' argument rested largely on the technical differences between the entities owning the small portion and those owning the large portion of the Maison Grande land. The Court finds no such importance in those distinctions in the context of the antitrust laws. These are, in fact, just the sort of technicalities which antitrust analysis ignores. The plaintiffs make no claim that Robert Siegel was not effectively disposing of his income by transferring part of his interest in the profits from the Maison Grande to the Robert Siegel Family Trust. Neither do the plaintiffs contend that Dorten, Inc, was not part of and controlled by G.A.C. which also owned and controlled Maison Grande, Inc.

More importantly, no amount of bifurcation or trifurcation of ownership of the Maison Grande condominium or parts thereof could make it anything but a single condominium development. The artificiality of the intra-corporate, intra-family transfer of the almost haphazardly selected, small portion of the Maison Grande development is patent to even the plaintiffs. *See* page 9 of the plaintiffs' motion for new trial. The small portion lumps together a part of the Maison Grande's pool deck, several of its many parking spaces for cars, as well as the swimming pool for the development. The defendants labeled the 99-year lease a recreation lease, but any meaningful connection to recreation was little more than pleasantly coincidental to the defendants and was absolutely irrelevant to the plaintiffs as their testimony demonstrated.

The small portion of land leased by the defendants is useless for any purpose other than serving the Maison Grande condominium. It is enclosed by the Maison Grande condominium and is inaccessible by public thoroughfare. The parking spaces on the small portion are necessary to qualify the Maison Grande for a certificate of occupancy from the city of Miami Beach.

Market realities compel the conclusion that there is only one product involved in the present case. The plaintiffs made no suggestion that such a portion of land or anything similar to it has ever been leased to anyone separately from a residence. The idea strains credulity beyond the point where reasonable minds could disagree.

This small piece of land was not a club. There were no recreation services involved under the lease. *Cf. Chatham Condominium Associations v. Century Village, Inc.,* 597 F.2d 1002 (5th Cir. 1979). The 99-year lease was merely a payment device whereby the defendants could reap a handsome profit while being protected from the ravages of inflation. *Cf. Fortner II,* 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977).

The Fifth Circuit stated the point in *Chatham, supra,* at 1013:

At one end of the spectrum, we feel certain that the requirement that purchasers of condominiums also buy an undivided interest in certain common areas does not involve two separate products. At the other end of the spectrum, however, it would clearly be improper to require condominium purchasers to patronize, for example, a local shopping center owned by the condominium developers; in this hypothetical situation, two separate products are clearly involved. Somewhere in between these two extremes the line be-

tween which products constitute part of the condominium "leisure living" package and which products are separate must be drawn.

Here, the alleged tied product falls well within even a narrow definition of a "leisure living package" which, as the Court of Appeals stated, is clearly not a separate product. The lease here, involving a swimming pool and a small percentage of the building's parking spaces, has nothing to do with any market separate from housing.

For all of the above reasons the Court finds as a matter of law that there were not two products in this case, and on that issue the Court hereby *GRANTS* the defendants' motion for judgment notwithstanding the verdict.