## NATIONAL OFFICE MACHINE DEALERS ASSOCIATION

v.

## MONROE, THE CALCULATOR CO., a Division of Litton Industries, Inc.

### No. 79 C 1536.

United States District Court, N. D. Illinois, E. D.

Feb. 25, 1980.

Robert C. Goldberg, Robert S. Atkins, Freeman, Atkins & Coleman Ltd., Chicago, Ill., for plaintiff.

Clay H. Phillips, Peter M. Sfikas, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Edward P. Henneberry, Howrey & Simon, Washington, D. C., for defendant.

### MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiff, National Office Machine Dealers Association (NOMDA), filed this lawsuit alleging that the defendant Monroe, the Calculator Company (Monroe), has violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. NOMDA, a non-profit corporation with over 3,900 dealer members located in the United States and abroad, charges that in November, 1978, Monroe changed a long-standing policy of selling parts, service manuals and other information to NOMDA members. The purpose and effect of changing this practice allegedly was to monopolize the relevant market, making it impossible for NOMDA members to service Monroe machines. The plaintiff requests declaratory and injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

The defendant has filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that NOMDA lacks standing to sue on behalf of its member dealers, and that NOMDA itself has not been harmed by the defendant's conduct. This court assumes the allegations in the Complaint are true for the purposes of this motion.

The principal issue before the court is whether section 16 of the Clayton Act, 15 U.S.C. § 26, authorizes an association such as NOMDA to sue on behalf of its members for injunctive relief. Federal courts have

reached differing conclusions on that issue for varying reasons. This court concludes, for the reasons hereinafter stated, that NOMDA does have standing. Accordingly, the motion directed to NOMDA's capacity to sue is denied.

Defendant contends that plaintiff lacks standing because it asserts claims on behalf of its members which are not of a sort personal to itself. It urges that both statutory construction and constitutional mandate require that plaintiff must have a direct interest in the claim alleged. *United States v. Borden Co.*, 347 U.S. 515, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954); *Nassau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151 (2d Cir. 1974).

The constitutional arguments are not persuasive. A case or controversy is explicitly alleged, since plaintiff claims direct commercial injury to its members. Clearly, the members have a sufficient stake in a justiciable controversy so as to permit them to bring suit directly. The issue is not whether there is an actual dispute but whether the trade association may, under Sec. 16 and prudential rules for standing, assert the claims of its members on their behalf. See *Warth v. Seldin*, 422 U.S. 490, 498–501, 95 S.Ct. 2197, 2204–2206, 45 L.Ed.2d 343 (1975).

In *United States v. Borden Co., supra*, the Court concluded that relief secured at the instance of a private litigant, albeit acting as a "private attorney general", could not foreclose the federal government from pursuing possibly broader public rights under Sec. 16 of the Clayton Act. While the Court necessarily distinguished between private and public injuries, the issue of who might seek vindication for private injuries was neither before nor considered by the Court.

In *Nassau County Association of Insurance Agents, Inc. v. Aetna Life Casualty Co., supra*, the plaintiff trade association had sued for damages under Sec. 4 of the Clayton Act, 15 U.S.C. § 15. Unlike the injunctive provisions of Sec. 16, the damage provisions of Sec. 4 specifically restrict suit to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . .." No such restriction appears in Sec. 16. That statutory distinction between Sec. 4 and Sec. 16 accords with hoary judicial concepts of representational standing. See e. g. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 260–62, 92 S.Ct. 885, 890–891, 31 L.Ed.2d 184 (1972). The equitable class action, for example, is of ancient and honorable lineage. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Only in recent years has class representation in damage actions been permissible.

Associational or representational standing is a not unfamiliar concept. E. g. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin, supra*, 422 U.S. at 515, 95 S.Ct. at 2213. It has been specifically recognized in Sec. 16 cases, e. g. *Associated General Contractors of North Dakota v. Otter Tail Power Company*, 611 F.2d 684 (8th Cir. 1979); *Ala. Optometric Ass'n. v. Ala. State Bd. of Health*, 1974–2 Trade Cas. ¶ 75,226 (M.D.Ala.1974).

Unlike *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), plaintiff here claims direct commercial injury to its members; its members would otherwise have standing to sue in their own right. Plaintiff alleges that it has over 3,900 dealer members and is "dedicated to upholding the highest ethical and professional standards for all engaged in the manufacture, sale, distribution, maintenance and service of office machines." It charges that defendant's alleged refusal to supply parts and repair and maintenance information to NOMDA members has precluded them from carrying out existing contracts and has irreparably harmed their reputation for integrity and service. Since both relate to the ethical and professional obligations of members, the interests plaintiff here seeks to protect are germane to the organization's purpose. Finally, the complaint attacks an alleged policy of defendant equally applicable and equally detrimental to all NOMDA members and the relief sought is equitable. Neither the

claim asserted nor the relief requested requires the participation of individual members in the lawsuit. "[O]ne injunction is as effective as 100, and, concomitantly, . . 100 injunctions are no more effective than one." *Hawaii v. Standard Oil Co., supra,* 405 U.S. at 261, 92 S.Ct. at 891. Accordingly, the association has standing. *Hunt v. Washington Apple Advertising Commission, supra,* 432 U.S. at 343, 97 S.Ct. at 2441.

Class actions may be maintained on behalf of a numerous class by a single proper representative. That representative has representational standing by judicial rule. Presumptively he has such a personal stake in the outcome of the controversy as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. See *Sierra Club v. Morton, supra,* 405 U.S. at 732, 92 S.Ct. at 1364. The class action is a judicial device by which questions common to numerous persons can be expeditiously resolved, even though neither the class representative nor any other member of the class may have a sufficient stake in the outcome economically to justify his bringing an action solely to redress his individual injury.

Such a means of presenting the case or controversy may well have been appropriate here. This court can think of no reason, however, why requiring some member to come forward as a class representative would in some way be an appropriate manner for litigating the common questions presented, while suit by the trade association would not. Plaintiff is not a representative solely by judicial sanction. It is an entity to which the members have voluntarily subscribed in order to promote their common economic interests. It is a representative of its members even apart from this lawsuit. As such, it has associational or representational standing to pursue this action. The motion to dismiss is denied.