MISSION HILLS CONDOMINIUM ASSOCIATION M–1, Mission Hills Condominium Association M–2, Mission Hills Condominium Association M–3 and Mission Hills Condominium Association M–4, Plaintiffs,

v.

Eugene R. CORLEY, individually and d/b/a Eugene R. Corley Builders, the Corley Companies, Inc., an Illinois corporation, Corley, Inc. (previously known as Corley Management Corp.), an Illinois corporation, and Phoenix Mutual Life Insurance Co., a foreign corporation, Defendants.

No. 82 C 0308.

United States District Court,
N.D. Illinois, E.D.

Aug. 22, 1983.

tion." *EEOC v. County of Allegheny,* 705 F.2d at 682 (citations omitted).

Walter J. Starck, Foss, Schuman & Drake, Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for plaintiffs.

John G. Campbell, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The plaintiffs to this action are Mission Hills Condominium Association M–1, Mission Hills Condominium Association M–2, Mission Hills Condominium Association M–3 and Mission Hills Condominium Association M–4 ("Associations"), and they have sued on behalf of their members who purchased condominium units in the Mission Hills Country Club Village ("Development"). The defendants are Eugene R. Corley, individually and d/b/a Eugene R. Corley Builders, The Corley Companies, Inc., Corley, Inc., ("Corley"), and Phoenix Mutual Life Insurance Co. ("Phoenix"). Jurisdiction over the plaintiffs' two federal claims is conferred by 28 U.S.C. § 1337, and the plaintiffs ask the Court to assert pendent

jurisdiction over their twelve state law claims.

Presently before the Court is defendants' motion to dismiss the amended complaint. For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part. Also before the Court is the petition of six individuals, owners of units in the Development, to intervene as plaintiffs. That motion is granted.

## FACTS

On a motion to dismiss, the court must accept as true the allegations pled by the plaintiffs. The amended complaint and briefs filed relative to the instant motion reveal the following. The Development is a residential development located in Northfield, Illinois. Constructed and developed by Corley and Phoenix, the Development comprises approximately thirteen condominium properties, a private country club and other various amenities.

On or about August 8, 1973, a Blanket Declaration governing the Development was recorded. The Declaration, the legal instrument by which condominium property is created, imposed certain obligations and requirements with respect to the ownership and operation of the Development. Pursuant to the Development's Blanket Declaration, Corley and Phoenix retained three votes in the Mission Hills Homeowners Association ("Homeowners Association") for every unsold condominium unit. Approximately one year later, the Homeowners Association's By-laws were amended, giving Corley and Phoenix the authority to continue to administer the Homeowners Association and to disregard any vote of the unit owners until 60 days after the last condominium unit was sold. In their capacity as administrators of the Homeowners Association, Corley and Phoenix have entered into management, maintenance, and other property-related service contracts, for work on the Development's common areas, with business entities affiliated with either Corley or Phoenix. The services include snow removal, general maintenance, and landscaping. These service contracts were worth approximately $2 million in the four years preceding this action.

On March 24, 1982, the plaintiff Associations (they claim to represent the interests of all unit owners in four of the Development's thirteen condominium properties) filed an amended complaint. In their fourteen count amended complaint, plaintiffs charge that defendants' conduct violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the Illinois Antitrust Act, Ill.Rev.Stat. ch. 38 § 60–1 et seq., the Illinois Condominium Property Act, Ill.Rev.Stat. ch. 30, § 301, et seq., and the common law of Illinois.

First, plaintiffs charge that as a result of controlling the Homeowners Association, Corley and Phoenix are able to require unit owners to accept property-related services from entities controlled by Corley and Phoenix. They claim that but for the defendants' actions, the plaintiffs could purchase these services from various other independent and more competent concerns on more favorable terms. They state that the defendants have conspired to reject lower bids from potential competitors, and that the plaintiffs have paid $750,000 more to defendants than plaintiffs would have paid to others. Plaintiffs allege that this constitutes an illegal tying arrangement violative of federal and Illinois antitrust laws (Counts I–IV).

Second, plaintiffs allege that provisions of the Declaration and By-laws, giving Corley and Phoenix allegedly total authority over the administration of the Homeowners Association, are unconscionable and therefore invalid (Count V). In this connection, plaintiffs further allege that defendants' continued control over the Homeowners Association and defendants' behavior violate the Illinois Condominium Property Act (Counts VI, X, XIV). Third, plaintiffs charge that during the course of their administration of the Homeowners Association, Corley and Phoenix have breached various common law duties owed to the unit owners, and in the process have committed fraud and conversion (Counts VII–IX, XI–XIII).

Defendants have filed a motion to dismiss the entire amended complaint. In support of their motion, defendants argue that plaintiffs, as associations, lack standing to bring Counts I–IV. Second, defendants argue that Counts I–IV of the amended complaint fail to state claims under the antitrust laws, and that Counts VI and XIV fail to state claims under the Illinois Condominium Property Act. Third, defendants argue that the Declaration and By-laws are valid and enforceable contracts and are not unconscionable (Count V). Finally, defendants argue that since the amended complaint fails to state claims cognizable under federal law, the Court should dismiss the entire amended complaint (including the pendent claims) for lack of subject matter jurisdiction.

## STANDING

Counts I, II, III and IV of the amended complaint allege violations of federal and Illinois antitrust laws. Specifically, Count I seeks to recover treble damages, in the amount of $2,250,000, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for defendants' alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Count II, incorporating by reference the allegations of Count I and brought under Section 16 of the Clayton Act, 15 U.S.C. § 26, seeks to enjoin defendants from exercising any control over the Homeowners Association and taking any action for which the unit owners would incur a cost. Count III seeks to recover treble damages for defendants' alleged violations of the Illinois Antitrust Act, Ill.Rev.Stat. ch. 38, §§ 60–1 et seq., and Count IV, incorporating by reference the allegations of Counts II and III, also seeks injunctive relief.

Defendants move to dismiss all four counts on the ground that plaintiffs, as associations, lack standing to bring these claims. Asserting that these counts allege violations of antitrust laws arising from purchase agreements to which plaintiffs were not parties, defendants argue that plaintiffs have not been injured by defendants' conduct. Furthermore, defendants argue that plaintiffs should not be granted representative standing because plaintiffs have failed to satisfy the necessary requirements for such. Defendants claim that representative standing is inappropriate in the instant action due to a conflict of interest between the plaintiff associations and their members regarding the decision to bring the instant action.

The Supreme Court has recognized that an association has standing to bring suit on behalf of its members when: (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the association's purpose; and (3) neither the claim asserted or relief sought requires the individual participation of the members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Furthermore, the Court specifically has found that associations may seek injunctive relief because "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).

Relying upon these Supreme Court decisions, courts have upheld associational standing in federal antitrust actions seeking injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. *Associated General Contractors of North Dakota v. Otter Tail Power Company,* 611 F.2d 684, 690 (8th Cir.1979); *National Office Machine Dealers Association v. Monroe, The Calculator Co.,* 484 F.Supp. 1306, 1307 (N.D.Ill. 1980). Section 16 states, in pertinent part, that "[a]ny person, firm, corporation, or *association* shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws ..." (emphasis added). In recognizing associational standing in Section 16 cases, the courts have emphasized the absence of statutory language evincing an intent to restrict standing beyond the limitations established in Article III of the Constitution.

■ This Court concurs with the decisions reached by these courts and concludes that an association's right to bring a claim under Section 16 shall be scrutinized the same as in any other action brought by an association on behalf of its members. Applying the criteria set forth in *Hunt, supra,* the Court finds that plaintiffs have standing to seek injunctive relief against defendants for alleged antitrust violations. First, the individual members of the associations would have standing to bring this action since the injury claimed is to the members' condominium property. Second, given that plaintiffs are seeking to protect their members' property and to prevent their members from paying assessments derived from allegedly noncompetitive fees, the interests plaintiffs seek to protect are germane to the associations' purposes. Third, neither the relief requested nor the claim asserted require the participation of the association members. Plaintiffs allege that defendants have engaged in conduct resulting in an illegal tying arrangement. Proof of these allegations would not require member participation.

Defendants cite two Fifth Circuit cases holding that condominium associations lack standing to bring antitrust claims on behalf of their members. *Buckley Towers Condominium, Inc. v. Buchwald,* 533 F.2d 934 (5th Cir.1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 571 (1977); *Chatham Condominium Ass'ns. v. Century Village, Inc.,* 597 F.2d 1002 (5th Cir.1979). *Buckley* preceded *Hunt v. Washington State Apple, supra,* the leading Supreme Court case on associational standing. Further, while *Buckley* did refer to *Warth v. Seldin, supra,* see 533 F.2d at 938 n. 3, the Fifth Circuit found *Warth* "inapposite":

The Court in *Warth* held that an association may have standing as the representative of its members even in the absence of injury to itself, but the association must allege that its members are suffering or threatened with injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves been parties to the suit.

The plaintiff associations have here alleged what the *Buckley* court apparently there found lacking (¶ 18, Amended Complaint). The Fifth Circuit in *Chatham* followed its earlier decision in *Buckley* in addressing a question of associational standing, without citing or discussing any other cases.

The Court believes *Buckley* is distinguishable, since the *Warth* test, apparently not met in *Buckley,* has been met here. However, even if it were not so distinguishable, this Court would not follow *Buckley* because it seems not to follow Supreme Court precedent. Furthermore, it is against the overwhelming weight of other authority on the issue of associational standing. In addition to the cases cited above (*Hunt, Warth, Otter Tail,* and *Monroe, The Calculator Co.*), see also *National Collegiate Athletic Ass'n. v. Califano,* 622 F.2d 1382, 1387 (10th Cir. 1980); *Chicago-Midwest Meat Ass'n. v. City of Evanston,* 589 F.2d 278, 280 (7th Cir. 1978), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). This Court does not believe that the associational standing rule is different when the plaintiff is an association of condominium owners.

■ The Court also finds that plaintiffs have standing to seek injunctive relief against defendants for alleged violations of the Illinois Antitrust Act. Claims for injunctive relief do not require the members' individual participation and there is every reason to expect that, if granted, the relief sought will benefit all of the members equally. Further, Illinois law explicitly allows an association to bring suit on behalf of its members. The Illinois Condominium Property Act, Ill.Rev.Stat.1978, ch. 30, § 309.1, states in relevant part: "The board of managers [of the condominium association] shall have standing to act in a representative capacity in relation to matters involving the common elements of more than one unit, on behalf of the unit owners, as their interests may appear." The Illinois courts have construed this statute to allow a condominium association to sue on behalf of its members. *Tassan v. United Development Co.,* 88 Ill.App.3d 581, 43 Ill.Dec. 769,

781–82, 410 N.E.2d 902, 914–15 (1st Dist. 1980) (§ 309.1 gives association right to sue on behalf of its members; individual owners also retain right to sue); *St. Francis Courts v. Investors Real Estate,* 104 Ill. App.3d 663, 60 Ill.Dec. 375, 376–77, 432 N.E.2d 1274, 1275–76 (1st Dist.1982) (§ 309.1 gives association standing to sue; *Tassan* interpreted to allow either association or individual to bring suit).

Defendants argue that plaintiffs should be denied standing here due to an alleged conflict among the members regarding the decision to institute the instant action. Defendants' argument is unpersuasive. Contrary to the naked assertion in defendants' brief, there is no allegation in plaintiffs' amended complaint indicating any conflict among the associations' members. The Court will not deny plaintiffs standing to seek injunctive relief simply on the basis of a vague and unsubstantiated allegation.

■ Plaintiffs, however, lack standing to bring a claim for damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15. Unlike the injunctive provision of Section 16, the damage provision of Section 4 expressly restricts suit to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . ." The Court interprets this language as precluding an association—as distinct from its individual members—from bringing a claim for treble damages for alleged antitrust violations, where the association has not been injured in its "business or property."

The Supreme Court has noted that standing to sue for damages under Section 4 is more limited than standing to sue for injunctive relief under Section 16. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184 (1972). The "language in § 4 was intended to screen out some potential plaintiffs from bringing treble damage actions, even though they could bring suits for injunctive relief." *Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172, 1175 (5th Cir.1976). *See also National Constructors v. National Elec. Contractors,* 498 F.Supp. 510, 518–20 (D.Md.

1980) (association has standing to sue for injunctive relief under Section 16, but may not sue for damages under Section 4), *aff'd,* 678 F.2d 492 (4th Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3535 (U.S. Jan. 18, 1983) (No. 82–1146). The associations here have not alleged to have been damaged in their business or property. Instead, the members are the ones who have suffered money damages. Further, under the *Hunt* test, association standing would be inappropriate for the damage claims here, since the individuals would be required to participate to prove the damages suffered.

■ Similarly, the Court finds that the plaintiffs lack standing to bring a claim for treble damages against defendants for alleged violation of the Illinois antitrust laws. Ill.Rev.Stat. ch. 38, § 60–7(2), uses the same words ("business or property") as Section 4 of the Clayton Act. The legal analysis is the same as recited above.

In summary, the Court concludes that plaintiffs have standing to seek injunctive relief against defendants for alleged violations of federal and Illinois antitrust laws. However, plaintiffs do not have standing to seek monetary damages for the aforementioned allegations. Accordingly, Counts I and III of the amended complaint (both of which seek money damages), are dismissed, while Counts II and IV (seeking injunctive relief) remain.

## FEDERAL ANTITRUST CLAIMS

Defendants move to dismiss Count II of the amended complaint, claiming violations of Section 1 of the Sherman Act, asserting that this count does not allege the substantive elements necessary to support a "tying action" under Section 1. Characterizing Count II as constituting a claim solely for *per se* violations of Section 1, defendants argue that Count II is defective because it fails to allege the existence of two distinct products and defendants' "sufficient economic power." In opposing the motion, plaintiffs argue that Count II sets forth the essential elements to maintain an action for a *per se* violation of Section 1. Further-

more, plaintiffs argue that, even if Count II does not support a claim for a *per se* violation of the Sherman Act, their allegations state a claim under a Rule of Reason theory.

## 1. PER SE VIOLATIONS OF SECTION 1

■ Section 1 of the Sherman Act provides that any restraint of trade or commerce among the several states is illegal. It is well established that tying arrangements comprise conduct that is illegal *per se* under Section 1 of the Sherman Act. *Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation*, 549 F.2d 368, 374 (5th Cir.1977); *see generally Hovenkamp, Tying Arrangements in the Real Estate Market: Federal Antitrust Law and Local Land Development Policy*, 33 Hast. L.J. 325 (1981) ("*Hovenkamp*"). A tying arrangement generally is defined as an arrangement whereby a seller agrees to sell or lease one product (the "tying product") only on the condition that the buyer also purchase or lease a second product (the "tied product"). See *Hovenkamp, supra* at 325. Tying arrangements have been considered violative of the antitrust laws because by using their monopoly power in the tying product to create a monopoly in the tied product, sellers inhibit competition in the market for the tied product. *Hovenkamp, supra* at 327.

■ To maintain an action for damages due to an allegedly illegal tying arrangement, a plaintiff must show: (1) separate tying and tied products; (2) evidence of actual coercion by the seller that forced the buyer to accept the tied product; (3) sufficient economic power held by the seller in the tying product to coerce purchaser acceptance of the tied product; (4) anticompetitive effects in the tied market; and (5) a not insubstantial effect on interstate commerce. *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56–57 (2d Cir.1980). *See also Fortner Enterprises, Inc. v. United States Steel*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

■ Defendants argue that plaintiffs have failed to set forth the necessary allegations, since in defendants' view the instant action involves only one product, *i.e.,* a "leisure living package." The Court rejects this argument, however, and finds (at this pleading juncture, at least) that this case involves two distinct products.

The instant action involves both the sale of condominium units and property-related service contracts. Management services and the sale of condominium units are generically different and are not the same product. *Jones v. 247 E. Chestnut Properties*, [1975–2] Trade Cas. ¶ 60,491, at 67,162 (N.D.Ill.1974). It is inappropriate to characterize such disparate items as one product simply because they both are related, in some way, to a condominium development. *But see Levinson v. Maison Grande Inc.*, 517 F.Supp. 963 (S.D.Fla.1981) (court sees purchase of condominium with 99 year lease to swimming pool, located on condominium common area, to be a "single condominium development"; swimming pool property could not be separated from rest of condominium property).

In *Johnson v. Nationwide Industries, Inc.*, 450 F.Supp. 948 (N.D.Ill.1978), the court found that the purchase of a condominium was not "tied" (within the meaning of the Sherman Act) to a long-term garage lease, where the lease had been entered into years before the apartment building was converted to condominiums. However, in the same case the court held that the condominium could be illegally "tied" to a contract to manage the building. The management contract is equivalent to the service contracts at issue here. Though *Johnson* is cited by the defendants, it supports the plaintiffs' position.

Further, the reasoning of *Chatham Condominium Ass'n., supra*, 597 F.2d at 1013, supports the view that the "leisure living package" argument is in the middle of the spectrum of antitrust tying law, and that facts must be developed before a court should rule as a matter of law that a leisure living package is one product. *See also Miller v. Granados*, 529 F.2d 393 (5th Cir. 1976) (purchase of condominium conditioned

on acceptance of management contract to provide various services states a cause of action under Section 1 of Sherman Act.)

■ Defendants also claim that plaintiffs have failed to allege that defendants have "sufficient economic power" in the tying product, *i.e.,* the condominium real estate market. Therefore, defendants argue that plaintiffs have failed to state a claim for a *per se* violation of Section 1 of the Sherman Act.

The Court finds defendants' argument unpersuasive. A fair reading of plaintiffs' amended complaint reveals that plaintiffs have alleged that defendants maintained such an economic position so as to have "the power to exact extraordinary nonprice concessions from the purchasers over and above the premium price." Amended Complaint, Count I ¶ 7A. Since on a motion to dismiss the Court must construe allegations in the plaintiffs' complaint as being true, the Court concludes that plaintiffs have set forth the necessary allegations to maintain an action for a *per se* violation of Section 1 of the Sherman Act.

The defendants' request that the Court take judicial notice that the Chicago condominium market was "hot" in the 1970's, so that defendants cannot be said to have had "sufficient economic power," is disregarded. This is a matter for proof, not pleading. *Cf. Levinson v. Maison Grande, supra* (jury finds defendants did ·not have sufficient economic power in market).

### 2. RULE OF REASON

■ Even if unsuccessful in demonstrating all of the essential elements of a tying arrangement, plaintiffs may nevertheless prevail by showing that defendants' conduct unreasonably restrains competition. *See Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 500, 89 S.Ct. 1252, 1257, 22 L.Ed.2d 495 (1969). In the instant action, the amended complaint is replete with allegations with respect to the ways in which defendants' conduct allegedly restrained competition. Thus even if plaintiffs are unsuccessful in establishing a claim for a *per se* violation of Section 1, the amended complaint nonetheless sets forth a cause of action under the federal antitrust laws.

### ILLINOIS CONDOMINIUM PROPERTY ACT

Counts VI and XIV of the amended complaint allege violations of the Illinois Condominium Property Act, Ill.Rev.Stat. ch. 30 § 318.2, due to defendants' continued control over the Homeowners Association. Defendants move to dismiss these counts on the ground that the Homeowners Association is not subject to the Illinois Condominium Property Act.

■ The Court finds that Counts VI and XIV state claims upon which relief may be granted. Section 318.2 provides, in pertinent part, that the election of the board of directors of an association of condominium unit owners shall be held no later than sixty days after seventy-five percent of the units have been sold or three years after recording of the Declaration, whichever is earlier. The Declaration was recorded approximately ten years ago and no such election has taken place. The plaintiffs have alleged that the defendants adopted provisions of the Blanket Declaration and By-laws which violate the express terms of § 318.2, and that it is defendants who have refused to abide by the requirements of § 318.2. Defendants' position (obscure at best) is unsupported by case law. The Court cannot say that defendants have shown that plaintiffs cannot recover under § 318.2 as a matter of law. The motion to dismiss Counts VI and XIV is denied.

### UNCONSCIONABILITY OF THE DECLARATION AND BY–LAWS

■ Similarly, the Court denies defendants' motion to dismiss Count V of the amended complaint, alleging the invalidity of certain provisions of the Declaration and By-laws. The term "unconscionability" is used to describe a contract that is "improvident, totally one-sided or oppressive." *Neal v. Lacob,* 31 Ill.App.3d 137, 334 N.E.2d 435, 439 (1st Dist.1975). This cannot be decided on a motion to dismiss. The Court finds

that Count V sets forth sufficient allegations to state a claim for unconscionability, and the motion to dismiss is denied.

## CONCLUSION ON DEFENDANTS' MOTION TO DISMISS

Since the defendants' motion to dismiss the federal cause of action is denied, the Court has subject matter jurisdiction to hear the federal claim. By virtue of the doctrine of pendent jurisdiction, the Court will assert (at this juncture) jurisdiction over the remaining state law causes of action brought by the plaintiffs. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## PETITION TO INTERVENE

Six individuals who were residents and owners of units in the Development have sought leave to intervene in this action, pursuant to Fed.R.Civ.P. 24(a), as party plaintiffs. They have attached a copy of their proposed complaint. This complaint sets forth the same basic facts and legal theories of the plaintiff Associations' amended complaint. In addition, the potential intervenors seek leave to represent a class of all persons who owned units in the Development during the period between May 18, 1978, and May 18, 1982. They allege that the class consists of more than 600 unit owners.

The defendants oppose the petition to intervene and present a curious argument. They say that the intervenors need not appear here because their interests are adequately represented by the plaintiff Associations. Yet in their motion to dismiss, they have argued that the Associations lack standing to bring the amended complaint, because "any rights of recovery lie with the individual unit owners, not with plaintiff Condominium Associations..." (Defendants' Motion to Dismiss, at 1–2). The inconsistency of the defendants' positions is apparent.

■ In any case, for the reasons stated above the plaintiff Associations lack standing under the antitrust laws to sue for

money damages. However, the individuals themselves are not so disabled. They can fill the gap left open by the Court's ruling on defendants' motion to dismiss Counts I and III. Further, they meet the criteria set forth in Fed.R.Civ.P. 24(a), for intervention as of right. The petition to intervene is granted, and the intervening plaintiffs are granted leave to file their complaint. Of course, the Court has not yet ruled upon whether the intervening plaintiffs may represent a class.

IT IS THEREFORE ORDERED that

(1) Defendants' motion to dismiss is granted as to Counts I and III of the amended complaint, and is denied in all other respects.

(2) The petition to intervene is granted, and the intervening plaintiffs are granted leave to file their complaint.

(3) Defendants are to answer the plaintiffs' amended complaint and the intervening plaintiffs' complaint within 21 days.

(4) A status hearing is set for September 16, 1983, at 9:45 a.m. Parties are to present a proposed discovery schedule at that time, specifying dates for the exchange of documents, the propounding of interrogatories, and the taking of depositions.