**SOUTHWEST SUBURBAN BOARD OF REALTORS, INC., Regan Corporation, and James Regan, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**BEVERLY AREA PLANNING ASSOCIATION, et al., Defendants-Appellees.**

**No. 86–3154.**

United States Court of Appeals, Seventh Circuit.

April 21, 1987.

Decided Sept. 8, 1987.

Rehearing Denied Oct. 5, 1987.

John L. Gubbins, John L. Gubbins & Assoc., Ltd., Chicago, Ill., for plaintiffs-appellants.

James J. Casey, Keck, Mahin & Cate, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs appeal the district court's grant of summary judgment in favor of defendants on the ground that plaintiffs lacked standing to maintain this antitrust action. We affirm in part and reverse in part.

## I.

In October 1984, the Southwest Suburban Board of Realtors ("SSBR"), a trade association of real estate brokers, filed this lawsuit on its own behalf and as a putative class representative of all its member brokers, except those brokers named as defendants in the suit. The complaint named as defendants the Beverly Area Planning Association ("BAPA"), a not-for-profit neighborhood planning association designed to promote the maintenance of a racially integrated community in the Beverly Hills/Morgan Park neighborhoods located on the southwest side of Chicago, Illinois, certain employees and volunteers of BAPA, certain real estate brokerage entities, and certain real estate brokerage principals. In April 1985, SSBR filed an amended complaint which added two named plaintiffs: Regan Corporation, a for-profit real estate firm and a member of SSBR, and its president, James Regan.

The plaintiffs' amended complaint essentially charges that the defendants have conspired to control and monopolize real estate transactions in the Beverly Hills/Morgan Park neighborhoods in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The complaint also includes pendent state law claims alleging tortious interference with contractual relations of the plaintiff and members of the plaintiff class. Plaintiffs allege that the relevant market for purposes of their antitrust allegations is "the provision of real estate brokerage service in the Beverly Hills-Morgan Park neighborhoods of Chicago, Illinois" (Amended Complaint ¶ 38).

The amended complaint alleges that BAPA has adopted a comprehensive plan to control the sale of real estate brokerage services and thereby all real estate transactions in the Beverly Hills/Morgan Park neighborhoods, with the intent and effect of monopolizing and excluding plaintiffs from the market. BAPA, in connection with the other defendants, has created the "Beverly Area Planning Association Housing Center," which among other things provides counseling services to prospective homebuyers and residential renters and maintains detailed records of all housing for sale in the area. According to the complaint, the defendants have agreed to maintain a list of preferred brokers and to boycott any broker who, like many SSBR members including the Regan firm, is not on the list. The defendants have encouraged preferred brokers to maintain their own listings of property for sale in the relevant market and discouraged them

from listing properties with SSBR's Multiple Listing Service, which SSBR provides to all its members for a fee. In addition, the amended complaint alleges that the defendants have harassed and intimidated the plaintiffs and other SSBR members by threatening to initiate frivolous litigation charging violations of the fair housing laws. Finally, the defendants have allegedly induced prospective sellers of real estate to breach their listing contracts with non-preferred brokers. As a result of these activities, the plaintiffs allege that they have been deprived of their lawful share of the relevant market and accordingly have been denied real estate brokerage business which they otherwise would have achieved. The complaint seeks both damages and injunctive relief.

## II.

■■■ The district court held that each of the three named plaintiffs lacked standing to sue for the alleged antitrust violations. Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ..., and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701, the Supreme Court held that plaintiffs maintaining actions under § 4 must show more than simply an "injury causally linked" to an antitrust violation; instead "plaintiffs must prove *antitrust injury*, which is to say injury of the type the antitrust laws were intended to prevent

and that flows from that which makes the defendants' acts unlawful." See also *Cargill, Inc. v. Monfort of Colorado, Inc.*, —— U.S. ——, 107 S.Ct. 484, 488–489, 93 L.Ed.2d 427. Although a showing of antitrust injury is necessary to establish standing under § 4, the Supreme Court pointed out in *Cargill* that it is not always sufficient because a party may have suffered antitrust injury but still not be a proper plaintiff under § 4 for other reasons. 107 S.Ct. at 489 n. 5; see also *Local Beauty Supply, Inc. v. Lamaur, Inc.*, 787 F.2d 1197, 1201 (7th Cir.1986); Page, The Scope of Liability for Antitrust Violations, 37 Stan.L.Rev. 1445, 1483–1485 (1985) (distinguishing between concepts of antitrust injury and antitrust standing). To determine whether a party is a proper plaintiff under § 4, the Supreme Court has instructed lower courts to examine "other factors in addition to antitrust injury, such as the potential for duplicative recovery, the complexity of apportioning damages, and the existence of other parties that have been more directly harmed." *Cargill*, 107 S.Ct. at 490 n. 6 (citing *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 538–545, 103 S.Ct. 897, 908–912, 74 L.Ed.2d 723, and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707).[1]

■■■ The antitrust injury requirement is also applicable to antitrust actions seeking injunctive relief. Section 16 of the Clayton Act provides in part that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws...." 15 U.S.C. § 26. Section 16 dif-

---

1. In determining whether the plaintiffs have standing to seek recovery under the antitrust laws, the parties have focused on the "direct injury" and the "target area" tests of antitrust standing. Under the "direct injury" test, a plaintiff is denied standing if a third-party victim of the antitrust violation comes between it and the defendant. Under the "target area" test, a plaintiff is denied standing unless it is within the "area of the economy which is endangered by a breakdown of competitive conditions." See, e.g., *Repp v. F.E.L. Publications, Ltd.*, 688 F.2d 441, 444–445 (7th Cir.1982); *In re Industrial Gas*

*Antitrust Litigation (Bichan)*, 681 F.2d 514, 516 (7th Cir.1982). The Supreme Court, however, has expressed dissatisfaction with these tests. See *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 537 n. 33, 103 S.Ct. 897, 907 n. 33, 74 L.Ed.2d 723. Instead, in determining whether a party injured by an antitrust violation may recover treble damages, courts should focus on the antitrust injury requirement, analyzing the nature and the directness of the injury alleged, and the other factors set out in the text. *Id.*

fers from § 4 in that § 4 requires a plaintiff to show actual injury whereas § 16 only requires a showing of "threatened" loss or damage. Nonetheless, the Supreme Court in *Cargill* held that § 16 affords private plaintiffs injunctive relief only for those injuries cognizable under § 4 of the Act and that plaintiffs seeking such relief must therefore allege threatened loss or damage "of the type the antitrust laws were designed to prevent." 107 S.Ct. at 491 (quoting *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697). The Court explained that "[i]t would be anomalous ... to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred." *Id.* 107 S.Ct. at 490. While acknowledging that because of the difference in the remedy provided under § 4 and § 16, some of the factors appropriate to a determination of standing under § 4, such as the potential for duplicative recovery and the complexity of apportioning damages, would not be relevant to a determination of standing under § 16, the Court indicated that analysis of the antitrust injury requirement would be effectively the same under the two sections. *Id.* at 490 n. 6.

With these general principles in mind, we review the standing of each of the named plaintiffs in turn.

### A. *James Regan*

■ The amended complaint does not allege any injury suffered by plaintiff James Regan that is separate and distinct from that suffered by plaintiff Regan Corporation as a result of the defendants' alleged efforts to prevent non-preferred brokers from providing real estate brokerage services to prospective buyers and sellers in the Beverly Hills/Morgan Park area. Clearly Regan Corporation, and not James Regan individually, was the target of any anticompetitive practices. While James Regan may in fact have suffered some injury as a result of the alleged antitrust violation, presumably in the form of reduced salary, commissions, or other employment benefits due to the corporation's weakened competitive position, such injury was merely derivative of the injury suffered by the corporation itself.

■ Merely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute "antitrust injury" sufficient to confer antitrust standing. See *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 533–535 and 541 n. 46, 103 S.Ct. 897, 906–907, and 910 n. 46, 74 L.Ed.2d 723; *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 ("Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property"); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541–542 (9th Cir.1987); *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 608 (11th Cir. 1984) ("Neither an officer nor an employee of a corporation has standing to bring an action in his own right for an antitrust violation causing injury to the corporation and its business."), certiorari denied, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484; *In re Industrial Gas Antitrust Litigation (Bichan)*, 681 F.2d 514, 519–520 (7th Cir. 1982), certiorari denied, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487; *Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1131 (5th Cir.1975); *Loeb v. Eastman Kodak Co.*, 183 F. 704, 709 (3d Cir.1910) (injury to creditor and stockholder of injured corporation too "indirect, remote, and consequential" to permit them to maintain an antitrust action to recover treble damages). As an officer of Regan Corporation sustaining only derivative injury, James Regan lacks standing to maintain the present antitrust action against defendants.

### B. *SSBR*

SSBR contends that it has standing to maintain an antitrust action against defendants on two grounds. First it argues that it has proprietary standing under § 4 of the Clayton Act to seek treble damages because it has sustained an injury to its

business or property as a result of defendants' anticompetitive activities. Second it argues that it has representational standing under *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383, to maintain an action for injunctive relief pursuant to § 16 of the Clayton Act on behalf of its member brokers.

### 1. *Proprietary Standing*

As a part of its trade association activities, SSBR maintains a Multiple Listing Service ("MLS"), a comprehensive, computerized listing of real estate properties for sale in the south suburban communities of Chicago, including the Beverly Hills/Morgan Park neighborhoods. SSBR charges a substantial initiation and annual fee to members who desire to participate in the MLS. The complaint alleges that the defendants have conspired and agreed to boycott the MLS by refusing to list any of their properties with SSBR. Furthermore, the defendants have allegedly urged consumers to boycott the MLS as well. As a result of these activities, SSBR contends that it has been directly injured in its "business or property" since the MLS is no longer a useful marketing tool in the relevant market area.

█ We must first determine whether the alleged injury sustained by SSBR is of "the type the antitrust laws were intended to prevent." *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697. The antitrust laws are of course for the benefit of competition, not competitors. *Id.* at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510); *Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1338 (7th Cir.1986). In *Associated General Contractors,* the Supreme Court explained that "the Sherman Act was enacted to assure customers the benefits of price competition, and our prior cases have emphasized the central interest in protecting the economic freedom of participants in the relevant market." 459 U.S. at 538, 103 S.Ct. at 908; see also *Ball Memorial Hosp.,* 784 F.2d at 1338 ("The antitrust laws protect efficient production for the benefit of consumers."); *Fishman v. Estate of Wirtz,* 807 F.2d 520, 566 (7th Cir. 1986) (dissenting opinion). As set out in the complaint, the relevant market is the provision of real estate brokerage services in the two neighborhoods at issue, not the provision of listing services to brokerage firms. SSBR is simply not a participant in this market; it does not supply real estate brokerage services nor does it purchase such services. Rather it merely supplies firms in the relevant market with a computerized listing service.

Moreover, the alleged anticompetitive practices of the defendants were directed not at SSBR as an entity but at its member brokers. The complaint maintains that the defendants' intent was to exclude non-preferred brokers from the brokerage services market in Beverly Hills and Morgan Park. To make it more difficult for the non-preferred brokers to compete effectively, the defendants allegedly conspired and agreed not to list properties with SSBR so that it could no longer offer a comprehensive listing service to those brokers. In *Bichan,* this Court recognized that as a general rule suppliers of an injured customer may not seek recovery under the antitrust laws because their injuries are too "indirect, secondary, or remote." 681 F.2d at 519–520. Of course the injury to SSBR as a supplier is slightly more subtle than the usual case where the supplier's injury takes the form of reduced demand for its goods or services due to the customer's weakened market position. Here the complaint alleges that the defendants took direct action against the supplier (SSBR) to reduce the value of its product (the MLS) to their competitors. Nevertheless, any injury which SSBR sustained by virtue of the defendants' alleged boycott of the MLS was only indirectly related and incidental to the anticompetitive scheme, the intent and effect of which was allegedly to gain control of the real estate brokerage services market in Beverly Hills and Morgan Park and thereby exclude SSBR member brokers.

Finally, if the non-preferred brokers have in fact been injured by the defendants' anticompetitive activities, their injuries

would be direct and, as we will discuss *infra* in connection with Regan Corporation, they would have a right to maintain their own antitrust actions against the defendants. As the Supreme Court indicated in *Associated General Contractors,* 459 U.S. at 542, 103 S.Ct. at 910, "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party ... to perform the office of a private attorney general." Consequently, our conclusion that SSBR has suffered no antitrust injury and hence may not maintain an antitrust action under § 4 of the Clayton Act "is not likely to leave a significant antitrust violation undetected or unremedied." *Id.*

### 2. *Representational Standing*

■ In addition to claiming that it has standing in its own right under § 4, SSBR also contends that it has standing to seek injunctive relief under § 16 of the Clayton Act on behalf of its member brokers.[2] A number of federal courts have recognized an association's standing to maintain an antitrust action seeking injunctive relief on behalf and as the representative of its members. See, *e.g., Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684, 690 (8th Cir.1979); *Mission Hills Condominium Ass'n M–1 v. Corley,* 570 F.Supp. 453, 457–458 (N.D.Ill.1983); *National Office Machine Dealers Ass'n v. Monroe, The Calculator Co.,* 484 F.Supp. 1306, 1307 (N.D.Ill.1980).[3] For purposes of determining the standing of an association in a § 16 action, these courts have resorted

to traditional doctrines of associational standing.

In *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228, the Supreme Court noted that "[i]t has long been settled that '[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members.'" (quoting *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343). The doctrine of associational standing set out in *Warth v. Seldin* was subsequently stated by the Court as a three-part test:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383. The Court reaffirmed these principles of associational standing in its recent opinion in *Brock.* 106 S.Ct. at 2533.

We do not believe that the second prong of the *Hunt* test has been satisfied. That prong requires that the interests the association seeks to protect by bringing suit be germane to the association's purpose. The alignment of the parties to this action, however, evidences a serious conflict in SSBR's interests. As SSBR concedes, at least three of the named real estate brokerage entity defendants are members of SSBR.

---

**2.** SSBR also maintains that it has standing to seek injunctive relief under § 16 of the Clayton Act on behalf of itself. However, for the same reasons we concluded that SSBR suffered no antitrust injury, we conclude that SSBR has demonstrated no threat of antitrust injury.

**3.** Although SSBR does not maintain that it has standing under § 4 to seek damages on behalf of its members, courts have uniformly rejected associational standing under § 4. See, *e.g., Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184; *Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684,

689 n. 5 (8th Cir.1979) (collecting cases); *Mission Hills Condominium Ass'n M–1 v. Corley,* 570 F.Supp. 453, 459 (N.D.Ill.1983). The language of § 4 restricts suit to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" and hence does not encompass an association which has not itself suffered such injury. Moreover, associational standing under § 4 would be denied under the *Hunt* test, discussed *infra,* because the individual members would be required to participate in the suit to prove the damages they actually suffered.

Indeed what this suit amounts to is SSBR suing certain of its members on behalf of other of its members. If SSBR were permitted to pursue this action and were ultimately successful in obtaining the requested injunctive relief, its defendant members would without question be adversely affected and perhaps even seriously disadvantaged by the strictures of the injunction. That the remedy sought may directly affect certain members of SSBR gives rise to both actual and potential conflicts of interest among the members as a group, with the result being that their interests demand individual, not associational, representation. See *Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684, 690–691 (8th Cir.1979); *Calvin v. Conlisk,* 520 F.2d 1, 10–11 (7th Cir.1975), vacated on other grounds, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307, on remand, 534 F.2d 1251 (7th Cir.1976). As the Eighth Circuit concluded in *Otter Tail,* "[the members'] status and interests are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." 611 F.2d at 691.

Because the interests which SSBR seeks to protect by maintaining this action do not reflect and are actually at odds with the interests of some of its members, they certainly cannot be said to be "germane" to SSBR's overriding purposes, and SSBR cannot invoke representational standing as a basis for suing the defendants. Moreover, we are also skeptical whether SSBR could meet the third part of the *Hunt* test in light of the *Cargill* decision requiring § 16 plaintiffs to demonstrate the threat of antitrust injury. While the fact that SSBR's suit seeks injunctive relief and not damages substantially lessens the need for individual member participation, this action does not, as was the case in *Brock,* 106 S.Ct. 2523, present a pure question of law. Rather, establishing antitrust injury involves complex questions of fact and, given the allegations of the complaint, will re-

quire proof of actions taken by the defendants against individual SSBR members. For example, paragraph 40(b) of the amended complaint states that "the defendants have agreed to boycott and not to do business with any broker who is not a 'preferred broker.'" Paragraph 40(d) states "defendants have attempted to destroy and dilute the reputations and goodwill of plaintiffs [sic] brokers as to their competence, professionalism and ethical principles." Paragraph 40(f) states "defendants have harassed, threatened, annoyed and attempted to intimidate plaintiffs and their members by falsely charging them with violations of various laws and by threatening to file sham lawsuits against them." Paragraph 40(g) states "defendants have induced prospective sellers of real estate in the relevant market to breach their listing contracts with non-preferred brokers." Unlike *National Office Machine Dealers Ass'n v. Monroe, The Calculator Co.,* 484 F.Supp. 1306 (N.D.Ill.1980), cited by SSBR, the complaint here does not attack "an alleged policy of defendant[s] equally applicable and equally detrimental to all [SSBR] members," *id.* at 1307. We therefore think it likely that considering the nature of the antitrust injury alleged here, the claims asserted by SSBR would require the participation of individual members in the lawsuit.

## C. *Regan Corporation*

■ The district court held that Regan Corporation ("Regan") lacked standing to sue under the antitrust laws because it failed to establish that it had more than *de minimis* sales activity in the relevant market. The district court, and the defendants on appeal, rely on two district court cases, *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan,* 545 F.Supp. 765, 776–777 (N.D. Ill.1982), aff'd, 712 F.2d 270 (7th Cir.1983), and *Paquette v. Connecticut Natural Gas Corp.,* No. H 76–441 (D.Conn. Nov. 18, 1981),[4] for the proposition that "a company [that] does not compete in a given area of

4. The third case cited by the district court, *Berkey Photo Co., Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 289 (2d Cir.1979), has nothing whatsoever to do with antitrust standing. In that case

the court held that the plaintiff, after a full trial, had only proved *de minimis* injury and accordingly was not entitled to judgment because "the antitrust laws do not allow recovery where

the economy and [that] has taken no steps to enter that area [ ] may not complain of supposed diminution in competition in that area." *Ohio-Sealy*, 545 F.Supp. at 776–777. To the extent that these cases require a plaintiff to do a particular volume of business in the relevant market in order to have standing to complain about illegal activities in that market, we cannot agree.

■ The complaint here alleges that Regan has been the target of a group boycott by the defendants. The defendants allegedly have agreed not to do business with Regan, a non-preferred broker, have advised prospective buyers of real estate not to do business with Regan, have attempted to destroy the corporation's reputation and goodwill, and have induced prospective sellers of real estate to breach listing contracts with Regan. The fact that Regan has had only *de minimis* sales activity in the Beverly Hills/Morgan Park neighborhoods in recent years may simply reflect the effectiveness of the defendants' boycott.

Regan has certainly alleged injury "of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697. Regan claims that the defendants have undertaken activities to drive him out of the real estate brokerage services market in Beverly Hills and Morgan Park, thereby reducing price competition in that market. Moreover, it is apparent that Regan's alleged injuries are the direct result of the defendants' anticompetitive practices. Regan is therefore a proper plaintiff to maintain an antitrust action under either § 4 or § 16 of the Clayton Act.

By holding that Regan has standing to sue the defendants for alleged antitrust violations, we do not mean to intimate any view as to the merits of his action. Parts of Regan's antitrust claim are rather unusual. For example the allegation that the defendants have failed to list properties with SSBR's MLS and have instead maintained their own real estate listings essentially amounts to a charge that the defendants have not cooperated sufficiently with their competitors. The antitrust laws are usually employed to attack excessive rather than insufficient cooperation among competitors. See, *e.g., Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 374–376 (7th Cir.1986), certiorari denied, —— U.S. ——, 107 S.Ct. 1574, 94 L.Ed.2d 765. Furthermore, the fact that the defendants have failed to share information with their competitors, including Regan, does not seem to have prevented customers, either prospective buyers or sellers of real estate in the area, from seeking out Regan as a source of brokerage services. Nevertheless, the complaint does contain some allegations that the defendants have steered customers away from Regan and have even induced prospective sellers to breach listing contracts with the corporation. Regan is entitled to try to substantiate these allegations.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings consistent with this opinion.

there has been no showing that plaintiff suffered cognizable injury." *Id.*