**HENNESSY INDUSTRIES INC.,** Solar Industries, Inc., and Universal Equipment Mfg. Co., Plaintiffs-Appellants,

v.

**FMC CORPORATION** and Vulcan Equipment Co., Ltd., Defendants-Appellees.

No. 85–1136.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1985.

Decided Dec. 17, 1985.

Thomas H. Morsch, Sidley & Austin, Chicago, Ill., for plaintiffs-appellants.

James W. Rankin, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.

Before BAUER, Circuit Judge, SWY-GERT, Senior Circuit Judge, and CAMP-BELL, Senior District Judge.*

BAUER, Circuit Judge.

Plaintiffs, Hennessy Industries, Inc., Solar Industries, Inc., and Universal Equipment Manufacturing Co. (collectively "Hennessy") brought suit against the defendants, FMC Corporation ("FMC"), B & J Manufacturing Company ("B & J") and Vulcan Equipment Co. ("Vulcan") alleging that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Hennessy settled with B & J. The district court dismissed B & J from the action and granted the remaining defendants' motion to dismiss for failure to state a claim under the federal antitrust laws. Hennessy appeals. We affirm the findings of the district court.

## FACTS

Hennessy claims that the defendants tried to drive it out of the tire changing equipment market by conspiring to deny it licenses under certain patents owned by B & J. Each of the parties, except B & J, are or have in the past been engaged in the manufacture and sale of wheel service equipment. The particular kinds of wheel service equipment involved in this action are machines which break the seal formed between wheel rims, put tires on wheel rims, and inflate tires (collectively referred to as "tire changers").

Hennessy has manufactured tire changers since the early 1960's. Hennessy's customers include automotive equipment distributors, jobbers, operators of automobile service centers, tire companies, service station owners, and others engaged in the sale or use of such equipment.

Hennessy is the dominant competitor in the industry with over 70% of total sales. B & J licensed all U.S. and Canadian manufacturers of tire changers, except Hennes-sy. Defendants' sales amount to less than 15% of the total sales.

At all times during the pendency of this lawsuit, plaintiffs held a patent license enabling them to manufacture and sell the tire changers which are at the heart of the dispute.

Hennessy alleges that defendants met in Chicago in 1979 and agreed to take actions to increase FMC's share of the tire changer business and to eliminate Hennessy as a viable competitor. Pursuant to the agreement reached at the meeting in Chicago in 1979, B & J notified Hennessy that it could not have a license unless it paid a royalty substantially higher than the royalties being paid by FMC and other members of the tire changer industry. Because of this, Hennessy was forced to suspend its manufacture and sale of tire changers with inflation features. Subsequent to this notification, after Hennessy's sales activities had been shut down for approximately eight weeks, Hennessy acquired Solar Industries and Universal Equipment, which had obtained licenses from B & J in 1975. Solar resumed the manufacture of Hennessy tire changers pursuant to this 1975 license agreement with B & J. B & J challenged Hennessy's use of Solar's license.

Hennessy also alleges that defendants conspired to disrupt its business by commencing lawsuits against it and its customers.

## I.

■ The district court held that Hennessy did not set forth a *per se* violation under § 1 of the Sherman Act, 15 U.S.C. § 1. We agree. Although Hennessy characterizes the alleged concerted restraint of trade as a *per se* violation of Section 1, attachment of the *per se* label is inadequate in itself to sustain a Section 1 violation without a showing of injury to competition. In *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984), this court adopted a

---

* Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

stringent test to determine whether a violation is illegal *per se.* We held that "the *per se* label must be applied with caution and we will expand that class of violations 'only after the courts have had considerable experience with the type of conduct challenged and application of the Rule of Reason has inevitably resulted in a finding of anticompetitive effects.'" 745 F.2d at 1108. The district court found no anticompetitive effects after applying the Rule of Reason analysis.

▮ This court held in *Moraine Products v. ICI America, Inc.,* 538 F.2d 134 (7th Cir.1976), *cert. denied,* 429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976), that the Sherman Act precludes "only those contracts or combinations which unreasonably restrain competition." The court cited business arrangements such as price-fixing, division of markets among competitors, tying arrangements, and boycotts as illegal *per se.* The conduct challenged by Hennessy fits none of these categories. The alleged conspiracy between a patent owner, B & J, its licensee, FMC, and its former licensee, Vulcan, constitutes a vertical restraint between a supplier of a license and its purchaser. It does not involve price fixing or division of markets since B & J has never been a competitor of FMC or Vulcan in the manufacture or sale of tire changing equipment. Nor were FMC or Vulcan competitors in the four year period preceding the complaint. "Only those vertical arrangements that accompany or implement a price fixing scheme are considered *per se* violations; other vertical arrangements must be tested under the Rule of Reason." *Car Carriers supra* at 1108.

In *Products Liability Ins. v. Crum & Forster, Ins.,* 682 F.2d 660, 663 (7th Cir. 1982) this court held that absent evidence that the purpose of a conspiracy was to raise prices, the conduct was not *per se* illegal. There, Getzoff, an insurance broker, alleged that another broker had conspired with Crum & Forster to keep Crum & Forster's business away from Getzoff. No allegation of price fixing was made. The court found that "an agreement whereby a supplier of some good or service re-

fuses, at the behest of one of his distributors to deal with a competitor of that distributor is not illegal *per se.*" The conduct Hennessy challenges fails to allege in any way that the object of the putative conspiracy constituted a price fixing scheme, tying arrangement, or a market allocation.

In *Polk Bros., Inc. v. Forest City Enterprises, Inc.,* 776 F.2d 185 (7th Cir.1985) this court cautioned that it "must be very sure that a category of acts is anticompetitive before condemning that category *per se.*" Because the type of conduct at issue here does not fit into any established *per se* category, and because we aren't persuaded that this conduct is of the same type, we rule that Hennessy failed to allege a *per se* violation of Section 1 of the Sherman Act.

## II.

▮ Since the complaint does not set forth a *per se* violation of Section 1, the claim must be tested under the Rule of Reason. In order to state a cause of action under that rule, plaintiffs must allege and prove that defendants' conduct has caused injury to competition, *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d at 1107; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549 at 554 (7th Cir.1980), not just injury to a competitor. Plaintiff makes no such allegation and therefore its complaint fails to state a claim under the Rule of Reason. Hennessy's argument that it could prove competitive injury at a trial on the merits fails because the test under the Rule of Reason analysis is what Hennessy alleges now, not what it might prove later. In sum, Hennessy's complaint fails to state a claim for a *per se* violation. It also fails to allege the key elements necessary to state a claim for a Rule of Reason violation. The complaint therefore does not state a cause of action under Section 1 of the Sherman Act.

## III.

▮ Hennessy's claim for a Rule of Reason violation under Section 2 of the Sherman Act, 15 U.S.C. § 2, is also defective because it makes no allegations as to defendants' market power. This court held in *Brunswick Corp. v. Riegel Textile Corp.,*

752 F.2d 261, 265 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985) that "the first step in any Rule of Reason case is an assessment of market power." Plaintiffs make no claim that defendants are the dominant competitor in the industry. In fact, the evidence shows that Hennessy has over 70% of the total sales in the tire changer industry.

To establish a Section 2 violation, a plaintiff must allege that defendants' attempted monopolization had a dangerous probability of success in the market. *Lektro-Vend Corp. v. Vendo Corp.,* 660 F.2d 255, 270 (7th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The complaint does not set forth any facts from which we can infer that defendants had sufficient market power to have been able to create a monopoly. The district court therefore properly dismissed plaintiff's Section 2 claim.

### IV

In conclusion, the district court correctly granted defendants' motion to dismiss for failure to state a claim under the federal antitrust laws. The order of the district court is

AFFIRMED.