**GAROT ANDERSON MARKETING, INC., a Wisconsin corporation, Richard Zupan, M.H.B. Inc., an Illinois Corporation, and Sam Smail, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD UNITED OF WISCONSIN, a Wisconsin service insurance corporation, and Health Care Service Corporation, an Illinois mutual reserve insurance company, Defendants.**

No. 88 C 20265.

United States District Court, N.D. Illinois, W.D.

Oct. 2, 1990.

Thomas J. Potter, Ludens, Potter & Burch, Morrison, Ill., for plaintiffs.

Michael E. Husmann, Michael, Best & Friedrich, Milwaukee, Wis., Peter DeBruyne, DeBruyne, Yalden & Olsen, Rockford, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are the following motions: 1) Defendant Blue Cross & Blue Shield's motion to dismiss for failure to state a claim; 2) Defendant Health Care

Service Corporation's motion to dismiss for failure to state a claim; 3) Plaintiffs' motion for partial summary judgment; 4) Defendant Blue Cross & Blue Shield's motion for summary judgment; 5) Defendant Health Care Service Corporation's motion for summary judgment; and 6) Plaintiffs' motion to amend complaint. For the reasons set forth herein, the court grants both Defendants' motions to dismiss the Section 2 claims, but grants Plaintiffs leave to amend their amended complaint to allege a Section 2 violation; denies Plaintiffs' motion for partial summary judgment; denies both Defendants' motions for summary judgment; and grants Plaintiffs' motion to amend complaint.

## BACKGROUND

On August 16, 1988, Plaintiffs Garot Anderson Marketing, Inc., Richard Zupan, M.H.B., Inc., and Sam Smail (hereinafter "Plaintiffs") filed suit in this court against Defendants Blue Cross & Blue Shield United of Wisconsin (hereinafter "Blue Cross–WI") and Health Care Services Corporation (hereinafter "HCSC"). Plaintiffs alleged in their complaint that Defendants violated Section 1 of the Sherman Act. On May 26, 1989, this court granted Plaintiffs' motion to amend complaint. Plaintiffs thereby amended their complaint to add the allegation that Defendants violated Section 2 of the Sherman Act; to add to the allegation that Defendants' conduct was a group boycott the alternative allegation that it was a unilateral boycott; and to add the allegations that Defendants' conduct was a unilateral or concerted refusal to deal, and a horizontal division of markets.

Plaintiff Garot Anderson Marketing, Inc. (hereinafter "GAMI") and its predecessor corporation, Burlington Garot Christman Agency (hereinafter "BGCA"), were independent insurance agencies. Beginning in the 1970s, GAMI and BGCA acted as agents for Defendant Blue Cross–WI and other companies in selling insurance for these companies.

1. The heading of the Agent Agreement states that it is between Blue Cross–WI and Garot–Anderson Agencies, Inc. Plaintiffs' complaint, Exhibit A. Plaintiffs assert, in their complaint

In 1981, Blue Cross–WI began underwriting the Midwest Farm Program (hereinafter "MFP"), an insurance plan for farmers other than those engaged in dairy farming. Blue Cross–WI entered into a contract with Blue Cross Blue Shield of Rockford (which has since merged into Defendant HCSC) which provided that Blue Cross Blue Shield of Rockford would administer the MFP. Blue Cross–WI and BGCA[1] entered into an "Agent Agreement" on October 1, 1985, wherein they agreed that BGCA would act as Blue Cross–WI's agent for soliciting subscribers for the MFP. The other plaintiffs, Richard Zupan, Sam Smail, and M.H.B., Inc., claim an interest in this case because each purchased rights to monthly renewal commissions earned from the premium payments made by MFP subscribers. Plaintiff Zupan purchased rights to renewal commissions from GAMI, and Smail and M.H.B., Inc., in turn, each purchased from Zupan the right to receive 15% of the commissions that Zupan received.

The termination of the MFP is the central event around which Plaintiffs' allegations revolve. On May 30, 1986, representatives of Defendants Blue Cross–WI and HCSC met at Lake Geneva, Wisconsin, and discussed problems with the MFP. A letter dated May 30, 1986, from a representative of Blue Cross–WI to a representative of HCSC refers to "the transfer" of the MFP from Blue Cross–WI to HCSC. That letter states further:

> As you previously indicated, there has been some concern by your marketing staff that the Midwest Farm Program originally developed with Rockford Blue Cross & Blue Shield is competing with other Illinois Blue Cross programs in the Northern Illinois area.
>
> In an attempt to eliminate the competitive nature of this program, we would propose to transfer the existing 831 subscribers now enrolled to Illinois Blue Cross & Blue Shield.

and in their motion to amend complaint, that Plaintiff Garot Anderson Marketing, Inc. (GAMI) is a wholly-owned subsidiary of Garot–Anderson Agencies, Inc.

Plaintiffs' brief in support of motion for partial summary judgment, Exhibit 1.

Another document, entitled "Memorandum of Understanding" and dated June 17, 1986, begins: "The following constitutes an understanding reached between Blue Cross & Blue Shield of Wisconsin and Blue Cross & Blue Shield of Illinois regarding termination of the Midwest Farm Program. Illinois Blue Cross & Blue Shield will notify all Midwest Farm Program members that said program will terminate coverage." Plaintiffs' brief in support of motion for partial summary judgment, Exhibit 3.

A letter dated June 26, 1986 from HCSC notified MFP subscribers that the MFP would be canceled, and advised them of the opportunity to apply for coverage through the Health Improvement Association (HIA), a health insurance policy offered by HCSC. That letter included the following language:

Dear Blue Cross/Blue Shield Member:

The Midwest Farmers Co-pay Blue Cross/Blue Shield group, of which you are a member, is being canceled effective August 1, 1986.

If you would like to apply for Blue Cross/Blue Shield coverage through the Illinois Health Improvement Association, please complete the application and evidence of insurability form enclosed.

. . . .

Please complete and return the forms in the enclosed envelope by July 10, 1986, to give us time to review your application prior to August 1.

Plaintiffs' brief in support of motion for partial summary judgment, Exhibit 5.

A letter from a representative of Blue Cross–WI to Mr. Darrell Anderson, of Plaintiff GAMI, dated June 23, 1986, began:

This is to advise you of the termination of the Midwest Farm Program in the state of Illinois effective August 1, 1986. Blue Cross & Blue Shield of Illinois, the servicing Plan, informed us that they will no longer agree to contract with us for local delivery of benefits under the Midwest Farm Program.

Plaintiffs' brief in support of motion for partial summary judgment, Exhibit 4.

The MFP was terminated on August 1, 1986. After that time, Plaintiffs began selling health insurance of Firemen's Fund Insurance Company to former MFP subscribers who had not purchased alternative coverage. Plaintiffs continued selling insurance other than the MFP for Blue Cross–WI after the MFP was terminated.

## DISCUSSION

*Defendants' Motions to Dismiss for Failure to State a Claim*

Both Blue Cross–WI and HCSC have filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. That rule allows a party to assert, by motion, the defense that a claim should be dismissed because it fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

 In analyzing a motion to dismiss, this court will not dismiss a complaint unless it is clear there are no set of facts that Plaintiffs could prove consistent with the pleadings that would entitle them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2332, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Murphy v. Lane*, 833 F.2d 106, 107 (7th Cir.1987); *Vaden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The court will accept all well-pleaded factual allegations in the complaint as true. *Vaden*, 809 F.2d at 363; *Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986). In addition, this court will view the allegations in a light most favorable to the non-moving party. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

The defendants present the same arguments in support of their motions. They argue that the court should dismiss Plaintiffs' claim that Defendants have violated

Section 2 of the Sherman Act. That section classifies as a felony the monopolization of trade, and reads in pertinent part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2 (1988). Defendants argue that Plaintiffs' Section 2 claims should be dismissed because 1) Plaintiffs have not alleged a relevant product and geographic market; 2) Plaintiffs have not alleged that Defendants possess monopoly power; and 3) there is no cause of action for a *per se* violation of Section 2.

Although Plaintiffs' complaint, as amended, does not allege a relevant product and geographic market, their reply to their motion for partial summary judgment does. That reply asserts that the relevant product market is group health insurance in Illinois, and that the relevant product sub-market is group health insurance in downstate Illinois. Further, the reply states that the relevant geographic market is downstate Illinois, and that the relevant geographic sub-market is the MFP subscriber population.

Antitrust plaintiffs need identify relevant product and geographic markets only if they base their theory of monopoly power on the market structure approach. This approach is described in *Broadway Delivery Corp. v. United Parcel Serv. of America, Inc.*, holding that absent strong evidence to the contrary, a firm with less than 50% of the market does not have monopoly power. 651 F.2d 122, 129 (2d Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384.

■ Plaintiffs may attempt to identify Defendants' monopoly power through two other approaches which require no allegations of relevant markets: excess profits and conduct. First, a finding of monopoly power may be based on a showing that Defendants realize profits consistently in excess of those found generally in the economy. *U.S. v. Aluminum Co. of America*, 148 F.2d 416, 426 (2d Cir.1945). Second, a finding of monopoly power may be based on a showing that Defendants' conduct is consistent with that of a monopolist. A court may find that a firm has monopoly power if its conduct is consistent with that of a monopolist, and inconsistent with that of a firm facing vigorous competition. *In re E.I. DuPont de Nemours & Co.*, 3 Trade Reg. Rep. (CCH) ¶ 21,770 (Oct. 20, 1980).

Defendants also claim that Plaintiffs' claim is deficient in that it fails to allege that Defendants possess monopoly power. Although Section 2 forbids *actual* monopolization, it also forbids *attempted* monopolization. 15 U.S.C. § 2 (1988). Even if they do not prove that Defendants achieved a monopoly, Plaintiffs may still prevail on their Section 2 claim if they prove that Defendants attempted monopolization.

■ The court finds that Plaintiffs' amended complaint is deficient in that it presents no *specific* allegations of how Defendants have violated Section 2 of the Sherman Act. The presence of allegations of relevant product and geographic markets in their reply brief is not enough; if Plaintiffs base their theory of a Section 2 violation on a market structure approach, the allegations of relevant markets must appear in their amended complaint. Plaintiffs' amended complaint does not allege that Defendants possess monopoly power, and does not indicate any approach through which this allegation will be proven.

As explained in the above paragraphs, Section 2 violations may be shown in various ways. Plaintiffs have not identified, however, any theory underlying their bare allegations of Section 2 violations. Plaintiffs' amended complaint contains no specific allegations 1) of either actual or attempted monopolization; or 2) of monopoly power, whether shown by market share, excess profits, or conduct (this second allegation being required if actual monopolization is alleged). Therefore, Plaintiffs' amended complaint fails to state a Section 2 claim for relief. Accordingly, the court grants the motions of both defendants to dismiss Plaintiffs' Section 2 claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Further, the court hereby grants to

Plaintiffs, on the court's own motion, leave to amend their amended complaint to allege sufficiently a violation of Section 2 of the Sherman Act.

■ Finally, Defendants assert that there is no cause of action for a *per se* violation of Section 2 of the Sherman Act. The court acknowledges that *per se* analysis is sometimes used for deciding alleged violations of Section 1 of the Sherman Act. Courts have determined that certain practices so blatantly suppress competition that they are conclusively unreasonable, or *per se* illegal. Price fixing,[2] market division, customer allocation, and group boycotts have all been defined as *per se* illegal under the Sherman Act. This court has not found, and Defendants have not pointed to, any case law specifically rejecting *per se* analysis for Section 2 claims. The court believes that some practices may so blatantly create, maintain, or attempt to create or maintain monopolization as to be *per se* illegal under Section 2 of the Sherman Act. Absent controlling precedent to the contrary, the court finds that Plaintiffs' amended complaint is proper in its allegation that Defendants' conduct was a *per se* violation of Section 2 of the Sherman Act.

*Plaintiffs' and Defendants' Motions for Summary Judgment*

■ This court will not grant any summary judgment motion unless all of the pleadings and supporting documents, if any, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court, however, is not required to evaluate every

conceivable inference that can be drawn from evidentiary matters, but only reasonable ones. *Parker v. Federal Nat'l Mortgage Ass'n,* 741 F.2d 975, 980 (7th Cir. 1984). Summary judgment should be used sparingly in antitrust litigation, because the question of the extent to which a restraint promotes or suppresses competition usually cannot be resolved in summary judgment proceedings. *Ratino v. Medical Serv. of D.C. (Blue Shield),* 718 F.2d 1260, 1268 (4th Cir.1983).

### Per Se *Analysis*

■ Plaintiffs' motion for partial summary judgment asks this court to rule that the acts described in the complaint are *per se* violations of Section 1 of the Sherman Act. Plaintiffs allege that Defendants' conduct constituted a group or unilateral boycott and a horizontal division of markets. Courts have previously held that group boycotts and horizontal division of markets are *per se* illegal. However, the details of the conduct alleged are in dispute; it is not clear, considering only the undisputed facts, whether the conduct was indeed a group boycott or horizontal division of markets. A Sherman Act violation will be called illegal *per se* only if courts have had considerable experience with the type of conduct challenged, and the effect of that type of conduct is inevitably anticompetitive. *Hennessy Indus. Inc. v. FMC Corp.,* 779 F.2d 402, 404 (7th Cir.1985), citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1108 (7th Cir.1984). The undisputed facts in this case do not meet these two requirements.

■ Courts may apply *per se* analysis to certain categories of agreements which are "plainly anticompetitive" and "lack any redeeming virtue." *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.,* 441 U.S. 1, 7–8, 99 S.Ct. 1551, 1556, 60 L.Ed.2d 1 (1979). Once a plaintiff has identified an alleged restraint of trade, the court will examine the defendant's justifications for

---

**2.** The first Supreme Court case defining price fixing as *per se* illegal was *U.S. v. Trenton Potteries Co.,* 273 U.S. 392, 401, 47 S.Ct. 377, 381, 71 L.Ed. 700 (1927). In *U.S. v. Socony–Vacuum*

*Oil Co.,* the Court extended this categorization, and held that any combination which tampers with price structures is illegal *per se.* 310 U.S. 150, 221, 60 S.Ct. 811, 843, 84 L.Ed. 1129 (1940).

the restraint. *Id.* Only if the court finds that the restraint lacks any redeeming virtue will the court apply *per se* analysis to it. *Id.*

██ Defendants assert that their justification for the termination of the MFP was that the MFP was unprofitable. Further, they assert that their justification for having HCSC notify MFP subscribers was that Illinois law required Blue Cross–WI to offer conversion coverage upon termination of the MFP. The court finds that these justifications remain in dispute; Plaintiffs argue that the reasons Defendants offer are a mere pretext for stifling competition. Because a genuine issue of material fact remains as to the Defendants' reasons for terminating the MFP, the court refuses to decide at this juncture whether *per se* analysis should apply, and therefore denies Plaintiffs' motion for partial summary judgment.

### The Agreement Requirement

██ Defendants argue that summary judgment should be granted in their favor because 1) Plaintiffs have not established the existence of an agreement in violation of Section 1 of the Sherman Act; 2) Plaintiffs lack standing; and 3) the conduct at issue in this suit is exempt from the Sherman Act because of the state action doctrine, and because of the McCarren–Ferguson Act. First, the court rejects Defendants' assertion that Plaintiffs have not established the existence of a restraining agreement. Although Section 1 requires that an agreement be proven, it need not be proven by direct evidence of an express agreement. *Interstate Circuit, Inc. v. U.S.*, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939). Evidence of a conspiracy is rarely proven directly, and is often proven by circumstantial evidence.

██ Although Defendants flatly assert that they never agreed to allocate markets or to boycott Plaintiffs, this assertion does not rule out the possibility that Defendants agreed to some action which had one or both of these effects. Defendants argue that HCSC did not need Blue Cross–WI's assent or agreement to terminate its servic-

ing of the MFP for Blue Cross–WI. Even if this is true, it is irrelevant; the Sherman Act prohibits parties from combining or agreeing to actions which result in a restraint of trade, even if one or both of the parties *could* have taken these actions unilaterally.

The Supreme Court has recently defined what an antitrust plaintiff must show to survive a motion for summary judgment: "that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the plaintiff]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Here, Plaintiffs have offered, as evidence of a restraining agreement, documents which present the reasonable inference that Defendants agreed to the decision to terminate the MFP, which was an insurance plan competing with an insurance plan of HCSC.

Defendant HCSC, in its brief in support of its motion for summary judgment, refers to two of the documents Plaintiffs offer: a letter, dated July 8, 1986, from Mr. Oschman (of Blue Cross–WI) to Mr. Oakes (of HCSC) which mentions "our agreement," and a document entitled "Memorandum of Understanding" which speaks of the "understanding" of Blue Cross–WI regarding the termination of the MFP. Plaintiffs' brief in support of its motion for partial summary judgment, Exhibits 2 and 3. The court finds that these and other documents which Plaintiffs have offered as evidence, described in the Background section of this Order, present an inference of conspiracy which is reasonable in light of the competing inferences that Defendants acted independently, or that Defendants' actions could not have harmed Plaintiffs.

### Standing

██ To establish standing in an antitrust action, plaintiffs must show that they have suffered antitrust injury, and that are the proper parties to bring suit. *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1377 (7th Cir.1987). Plaintiffs must

show that their injury was the direct consequence of the alleged antitrust violation, that the extent of their injury is determinable and not speculative, and that recovery by them will not duplicate potential recovery by other plaintiffs. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The directness of the alleged injury, the presence of an improper motive for the conduct alleged and the manageability of resulting litigation are factors favoring the grant of antitrust standing. *International Television Prods. Ltd. v. Twentieth Century–Fox Television Div. of Twentieth Century–Fox Film Corp.*, 622 F.Supp. 1532, 1537 (S.D.N.Y.1985).

■ The Supreme Court addressed the question of the proximity necessary for antitrust standing in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). The Court stated that 1) a physical and economic nexus must exist between the alleged violation and the plaintiff's harm; and 2) the injury must be of the type with which Congress was concerned in allowing a private right of action for antitrust violations through Section 4 of the Clayton Act, 15 U.S.C. § 15 (1988). *McCready*, 457 U.S. at 478, 102 S.Ct. at 2547. To have antitrust standing, a plaintiff need not allege that the injury suffered reflects the direct, intended anticompetitive effect; in other words, the plaintiff need not be the target of the alleged conduct. *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1431–32 (S.D.N.Y.1986). It is sufficient that the plaintiff participated in some relevant way in the part of the market endangered by the alleged antitrust violation. *Id.* at 1432.

None of the named plaintiffs was an employee of either defendant. Rather, Plaintiffs GAMI and Zupan acted as agents for Defendant Blue Cross–WI. The Agent Agreement reveals that Defendant Blue Cross–WI possessed little right to control Plaintiffs' actions. Thus, it appears that Plaintiffs were independent contractors rather than employees of Blue Cross–WI.

Further, the Agent Agreement itself specifically denies that Plaintiff GAMI was an employee of Blue Cross–WI. Plaintiffs' complaint, filed August 3, 1988, Exhibit A.

■ The Seventh Circuit held that merely *derivative* injuries suffered by employees, officers, shareholders, and creditors of an *injured* company do not confer antitrust standing. *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987). However, Plaintiffs' alleged injuries in this case are direct rather than derivative. Each Plaintiff claims a loss of commissions which are directly traceable to the termination of the MFP. Even though Plaintiffs Zupan, M.H.B., Inc., and Sam Smail did not earn these commissions except by purchasing rights to them, their loss, if proven, is a direct result of the termination of the MFP. Further, Plaintiffs are not "employees of an injured company." Even though Plaintiffs allege that Plaintiff Zupan was a sub-agent of Plaintiff GAMI, Defendants have not alleged that Zupan was GAMI's employee. Rather, without identifying specific Plaintiffs, Defendants assert that because Plaintiffs were sales agents for Blue Cross–WI, Plaintiffs should be viewed as employees and therefore denied standing. Because Defendants have not alleged that Plaintiffs are employees of an *injured company*, but of a co-conspirator company, Blue Cross–WI, the *Southwest Suburban* rule is inapplicable, and the court will not deny Plaintiffs standing.

The court finds that a critical issue remains in dispute: whether there was an agreement between Defendants to terminate the MFP. Because the MFP was a product competing with Defendant HCSC, such an agreement might have the effect or the purpose of suppressing competition. Thus, this disputed issue is material to this action, and the court therefore denies Defendants' motions for summary judgment.

### Applicability of Antitrust Laws

■ Finally, Defendants argue that federal antitrust laws do not apply to Plaintiffs' claim, because of the state action

doctrine and the McCarren–Ferguson Act. The state action doctrine exempts from antitrust scrutiny all alleged restraints of trade which are clearly expressed as state policy, where the state policy is actively supervised by the state. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). Defendants contend that Blue Cross–WI's consent to HCSC's letter offering insurance coverage to MFP subscribers was simply compliance with Illinois law, and that the state action doctrine is therefore applicable.

■ However, HCSC's offer of insurance to MFP subscribers is not the only conduct at issue here; it is only one aspect of the alleged agreement to terminate the MFP. Although Illinois has established a commission to supervise insurance companies, that alone is insufficient to bring the state action doctrine into play. The Illinois law requiring conversion coverage is not at issue; it is relevant only in that Defendants argue that it justifies HCSC's offer of insurance coverage to MFP subscribers. Defendants have not identified any state policy which permits or forbids the alleged conduct: two insurers agreeing to terminate a policy of one of them. Therefore, the state action doctrine is inapplicable, and the court rejects Defendants' argument that their conduct is exempt from antitrust scrutiny on the basis of that doctrine.

■ The McCarren–Ferguson Act exempts from antitrust laws practices which are the "business of insurance," are regulated by state law, and are not in the form of coercion, intimidation, or boycott. 15 U.S.C. §§ 1012(b), 1013(b) (1988). The criteria relevant to determining whether a practice is the business of insurance within the meaning of the Act are 1) whether the practice has the effect of transferring or spreading a policyholder's risk; 2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and 3) whether the practice is limited to entities within the insurance industry. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982). None of these criteria alone is necessarily determinative. *Id.*

■ Although the alleged conduct concerned two insurance companies and thus met the third criteria of *Union Labor,* the first two criteria are not satisfied. The first criteria concerns the shifting of risk between the insurer and the *insured, id.* at 130, 102 S.Ct. at 3009, and not between two *insurers,* as Defendants argue. There has been no showing that termination of the MFP shifted the MFP subscribers' risk from the subscribers to either Defendant, or vice versa. Further, the termination of the MFP was not an "integral part" of the policy relationship between MFP subscribers and either Defendant. It was simply an end to the policy relationship between MFP subscribers and Blue Cross–WI. The key relationship at issue is that between Blue Cross–WI and HCSC; the relationship between Defendants and policyholders is secondary. The conduct at issue is the agreement between the two Defendant insurers, which the court finds is not the "business of insurance" within the meaning of the McCarren–Ferguson Act. Therefore, the court need not, and will not decide whether this action meets the Act's other two requirements for exemption. The court hereby rejects Defendants' argument that the McCarren–Ferguson Act exempts this action from the antitrust laws.

*Plaintiffs' Motion to Amend Complaint*

Plaintiffs ask the court for leave to amend their amended complaint to add as a party plaintiff Garot–Anderson Agencies, Inc., and to add pendent state court claims. Plaintiffs assert, and Defendants have not denied, that current plaintiff Garot–Anderson Marketing, Inc. (GAMI) is a wholly-owned subsidiary of Garot–Anderson Agencies, Inc. In order to avoid the risk of duplicative lawsuits, the court finds it reasonable and prudent to allow Plaintiffs to add Garot–Anderson Agencies, Inc. as a party plaintiff.

Plaintiffs also seek to amend their amended complaint by adding Counts III, IV, V, and VI, which are now pending in state court in Whiteside County, Illinois.

These counts assert a right to relief for intentional interference with contract, intentional and malicious interference with contract, breach of contract, and breach of trust.

The issue of pendent jurisdiction arises when the original plaintiff sues the original defendant on a federal claim and a related state claim. A federal court has the power to exercise pendent jurisdiction over state claims which arise from the same nucleus of operative facts as federal claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Exercising pendent jurisdiction is left to the discretion of federal courts, and they may consider judicial economy, convenience, and fairness to litigants in deciding whether to hear pendent state claims. *Id.* at 726, 86 S.Ct. at 1139.

The counts that Plaintiffs ask to add to their amended complaint seek recovery from Defendants Blue Cross–WI and HCSC, and they relate to the termination of the MFP, and the Agent Agreement between Plaintiffs' predecessor in interest and Defendant Blue Cross–WI's predecessor in interest. The claims stated in these four counts arise from the same core of operative facts as the claims set forth in Plaintiffs' amended complaint before this court. Therefore, this court has power to exercise pendent jurisdiction over Plaintiffs' four counts now pending in state court. Because the same evidence, witnesses, and parties are involved, judicial economy, convenience, and fairness interests will be served by this court hearing Plaintiffs' state claims. Accordingly, the court grants Plaintiffs leave to amend their amended complaint by adding Counts III, IV, V, and VI.

## CONCLUSION

For the reasons set forth herein, the court grants both Defendants' motions to dismiss Plaintiffs' claim for violation of Section 2 of the Sherman Act, for failure to state a claim upon which relief can be granted. The court, on its own motion, grants Plaintiffs leave to amend their amended complaint to allege a Section 2 violation. The court denies Plaintiffs' motion for partial summary judgment, denies both Defendants' motions for summary judgment, and grants Plaintiffs' motion to amend complaint by adding a party plaintiff and adding pendent state claims.